Myron F. Smith
1319 W. Bullard Ave, Suite #1
Fresno, CA 93711
Telephone: (559) 226-5400
mfs@mfslaw.net

In Pro Per

**FILED**

MAR 3 0 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA -- FRESNO

|  |  |
|---|---|
| IN THE MATTER OF THE DETENTION AND SEIZURE OF IPHONE AND DOCUMENTS | Case No. 1: 1 7 MC 0 0 0 1 9 - SKO |

DECLARATION OF MYRON F. SMITH

DATE: APRIL 19, 2017
TIME 10 A.M.
LOCATION: DEPARTMENT
US FEDERAL COURTHOUSE, 2500
TULARE STREET, FRESNO CA

I, MYRON F. SMITH, do declare:

1. I was victim of the illegal search and seizure by agents of the US government on March 18, 2017.

2. I was returning from a business trip to Sofia, Bulgaria and arrived via Turkish Air (Flight 009) at approximately 6:30 P.M. I was met by a uniformed Customs Agent and escorted to secondary for a border search. During the course of the Border Search, Agents detained my personal Iphone . A true copy of the Detention Notice given to me is attached as Exhibit A. Further the Agents seized and copied documents. A true and correct list of the documents is attached as Exhibit B. I seek the return of my phone (or in the alternative destruction of whatever is seized from the phone) and destruction of all of the copies of the documents and reports referring to the documents.

3. Agents for the government advised they did not have a warrant.

4. Agents provided no verbal statements to me stating the grounds for the detention of my phone. Nor did they justify the seizure of the documents or the grounds for opening my personal first class mail.

5. As a result of this conduct by the government, I missed my flight to Fresno and was forced to find a hotel room for Saturday night.

6. Agent Kim located at the Fresno ICE office, advised that he was in possession of my phone. He further stated he was conducting a forensic search of my phone. Such search has extended past the five day time limit set out in Directive 3340-049. A true and correct copy of Directive 3340-049 is attached as Exhibit C.

7. None of the information on my phone is illegal to possess.

8. Attached hereto as Exhibit D is a true copy of the US Customs and Border Protection Policy Regarding Border Search of Information dated July 16, 2008.

8. I request the Court order the return of my phone or in the alternative, if the phone is released, the destruction of whatever they have removed, and further the destruction of all of the document copies seized by the Agents.

I declare under penalty of perjury the foregoing is true and correct and this declaration is dated March 28, 2017 at Fresno, CA.

Myron F. Smith

EXHIBIT "A"

**DEPARTMENT OF HOMELAND SECURITY**

No. 1629385

**DETENTION NOTICE AND CUSTODY RECEIPT FOR DETAINED PROPERTY**

Handbook 5200-09

| | |
|---|---|
| 1. Headquarters/Agency 040036 | Name of Agency: |
| 2. Certified Mail No. | |
| 3. Investigative Case No. | |
| 4. General Order No. | |
| 5. Exodus Command Center Notified? ☐ Yes  ☐ No   Date:   Time: | |

| 6. Port Code | 7. Date of Detention (mm/dd/yyyy) 3/18/2017 | 8. Time (Use 24 Hours) 2040 | 9. Entry Number |
|---|---|---|---|

| 10. Detained from: | 11. Seal or Other ID No. |
|---|---|
| Name: MYRON Francis Salwin | 12. Misc. Nos. |
| Address: 8522 N. Fuller  Fresno, CA 95720 | 13. Remarks: |
| Telephone No. (559) 276-5400 | 14. FPF No. (For DHS Lab Use Only) □□□□□□□□□□□□-□□ |

| 15. Point of Contact Information - Send all correspondence to: CALVIN KIM LSAI   Telephone No. (559) 487-6015 Fax No. (   ) | 16. Additional Information/Action Request from Importer/Exporter/ Subject |
|---|---|

**17. Reason for Detention:** Border Search

**18. Tests or Inquiries to be Conducted:**

### 19. PROPERTY (By Line Item) Attach DHS Form 58 if conveyance

| a. Line Item No. | b. Description | c. Packages Number | c. Packages Type | d. Measurement Qty. | d. Measurement UM | e. Est. Dom. Value | f. Samples Sent to DHG Lab | | Date |
|---|---|---|---|---|---|---|---|---|---|
| 001 | 1-Phone (A1778) IMEI 35NBC765HU33P67F | | | 1 | EA | $ | Yes ☐ | No ☐ | /  / |
| | | | | | | $ | Yes ☐ | No ☐ | /  / |
| | | | | | | $ | Yes ☐ | No ☐ | /  / |
| | | | | | | $ | Yes ☐ | No ☐ | /  / |

**20. Detaining Officer Name**

JUAN MUNOZ       (Signature)       3/18/2017

Print                  Signature                  Date

### 21. ACCEPTANCE/CHAIN OF CUSTODY

| a. Line Item No. | b. Description | c. Print Name/Title/Organization | d. Signature | e. Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Shipments may be detained for up to 30 days, unless statutory authority or interagency agreement mandates that a longer period of time is required, or the importer/exporter/subject requests a longer detention period through the Port Director.

DHS 6051A Continuation Sheet Attached? Yes ☐ No ☐

Previous editions are obsolete

DHS Form 6051D (08/09)

EXHIBIT "B"

EXHIBIT "B"

Documents copied from Brief Case:

1. Time Share Lease Agreement.
2. Shareholders Resolution for Authority to Act
3. Shareholder Resolution for acquisition of Stock
4. Shareholder Resolution for acquisition of Stock by Dolarian Capital, Inc.
5. Bulgarian document – to be filed in Sofia, Bulgaria
6. Bulgarian Document – to be filed in Sofia, Bulgaria
7. Bulgarian Document – to be filed in Sofia, Bulgaria
8. Bulgarian Document – Articles of Incorporation to be filed Sofia, Bulgaria
9. Corporate Secretary Certificate by A. Dolarian
10. E mail from Bulgarian Attorney dated: March 2, 2017
11. Motion for definite Statement to Myron F. Smith (sealed envelope)
12. Medicare Summary Notice for Sandra J. Smith
13. Make your Dreams come true – sealed envelope.
14. Notice of Medicare Premium Payment Due – Myron F. Smith
15. DMV vehicle Registration for Lexus 2006 5TLV687
16. Fresno Collection Notice from Treasurer/Tax Collector
17. Receipt from Business Programs Division of Secretary of State
18. Civil Penalty Notice from IRS – Sealed Envelope
19. Discovery (Interrogatories) and Admissions in the Abraham v. Dolarian Case – sealed envelope.
20. Business Card for Sue Gainor, Director, Office of Defense Trade Controls Compliance, US Department of State


Items No 1-10  relate to the business trip to Sofia, Bulgaria from March 3 to March 18, 2017.
Remaining Items were documents in my Briefcase

EXHIBIT "C"

## U.S. CUSTOMS AND BORDER PROTECTION

CBP DIRECTIVE NO. 3340-049

DATE: August 20, 2009

ORIGINATING OFFICE: FO:TO
SUPERSEDES:
REVIEW DATE: August 2012

SUBJECT:   BORDER SEARCH OF ELECTRONIC DEVICES CONTAINING
           INFORMATION

**1      PURPOSE.** To provide guidance and standard operating procedures for searching, reviewing, retaining, and sharing information contained in computers, disks, drives, tapes, mobile phones and other communication devices, cameras, music and other media players, and any other electronic or digital devices, encountered by U.S. Customs and Border Protection (CBP) at the border, both inbound and outbound, to ensure compliance with customs, immigration, and other laws that CBP is authorized to enforce.

These searches are part of CBP's long-standing practice and are essential to enforcing the law at the U.S. border. Searches of electronic devices help detect evidence relating to terrorism and other national security matters, human and bulk cash smuggling, contraband, and child pornography. They can also reveal information about financial and commercial crimes, such as those relating to copyright, trademark and export control violations. Finally, searches at the border are often integral to a determination of admissibility under the immigration laws.

**2      POLICY.**

2.1    CBP will protect the rights of individuals against unreasonable search and seizure and ensure privacy protections while accomplishing its enforcement mission.

2.2    All CBP Officers, Border Patrol Agents, Air Interdiction Agents, Marine Interdiction Agents, and other employees authorized by law to perform searches at the border, the functional equivalent of the border (FEB), or the extended border shall adhere to the policy described in this Directive.

2.3    This Directive governs border search authority only. It does not limit CBP's authority to conduct other lawful searches at the border, e.g., pursuant to a warrant, consent, or incident to an arrest; it does not limit CBP's ability to record impressions relating to border encounters; it does not restrict the dissemination of information as required by applicable statutes and Executive Orders.

2.4    This Directive does not govern searches of shipments containing commercial quantities of electronic devices (e.g., a shipment of hundreds of laptop computers transiting from the factory to the distributor).

CBP Form 232C (04/03)

2

2.5   This Directive does not supersede *Restrictions on Importation of Seditious Matter*, Directive 2210-001A.  Seditious materials encountered through a border search should continue to be handled pursuant to Directive 2210-001A or any successor thereto.

2.6   This Directive does not supersede *Processing Foreign Diplomatic and Consular Officials*, Directive 3340-032.  Diplomatic and consular officials encountered at the border, the FEB, or extended border should continue to be processed pursuant to Directive 3340-032 or any successor thereto.

2.7   This Directive applies to searches performed by or at the request of CBP.  With respect to searches performed by U.S. Immigration and Customs Enforcement (ICE), ICE Special Agents exercise concurrently-held border search authority that is covered by ICE's own policy and procedures.  When CBP detains, seizes, or retains electronic devices, or copies of information therefrom, and turns such over to ICE for analysis and investigation (with appropriate documentation), ICE policy will apply once it is received by ICE.

3     DEFINITIONS.

3.1   Officer.  A Customs and Border Protection Officer, Border Patrol Agent, Air Interdiction Agent, Marine Interdiction Agent, Internal Affairs Agent, or any other official of CBP authorized to conduct border searches.

3.2   Electronic Device.  Includes any devices that may contain information, such as computers, disks, drives, tapes, mobile phones and other communication devices, cameras, music and other media players, and any other electronic or digital devices.

3.3   Destruction.  For electronic records, destruction is deleting, overwriting, or degaussing in compliance with CBP Information Systems Security Policies and Procedures Handbook, CIS HB 1400-05C.

3.4   Border Search of Information.  Excludes actions taken to determine if a device functions (e.g., turning an electronic device on and off), or actions taken to determine if contraband is concealed within the device itself.  The definition also excludes the review of information voluntarily provided by an individual in an electronic format (for example, when an individual voluntarily shows an e-ticket on an electronic device to an Officer).

4     AUTHORITY/REFERENCES.  8 U.S.C. 1225, 1357 and other pertinent provisions of the immigration laws and regulations; 19 U.S.C. 482, 507, 1461, 1496, 1581, 1582, 1595a(d), and other pertinent provisions of customs laws and regulations; 31 U.S.C. 5317 and other pertinent provisions relating to monetary instruments; 22 U.S.C. 401 and other laws relating to exports; Guidelines for Detention and Seizures of Pornographic Materials, Directive 4410-001B; Disclosure of Business Confidential Information to Third Parties, Directive 1450-015; Accountability and Control of Custody Receipt for Detained and Seized Property (CF6051), Directive 5240-005.

3

## 5      PROCEDURES.

### 5.1      Border Searches.

5.1.1   Border searches may be performed by an Officer or other individual authorized to perform or assist in such searches (e.g., under 19 U.S.C. 507).

5.1.2   In the course of a border search, with or without individualized suspicion, an Officer may examine electronic devices and may review and analyze the information encountered at the border, subject to the requirements and limitations provided herein and applicable law.

5.1.3   Searches of electronic devices will be documented in appropriate CBP systems of records and should be conducted in the presence of a supervisor. In circumstances where operational considerations prevent a supervisor from remaining present for the entire search, or where a supervisory presence is not practicable, the examining Officer shall, as soon as possible, notify the appropriate supervisor about the search and any results thereof.

5.1.4   Searches of electronic devices should be conducted in the presence of the individual whose information is being examined unless there are national security, law enforcement, or other operational considerations that make it inappropriate to permit the individual to remain present. Permitting an individual to be present in the room during a search does not necessarily mean that the individual will be permitted to witness the search itself. If permitting an individual to witness the search itself could reveal law enforcement techniques or potentially compromise other operational considerations, the individual will not be permitted to observe the search itself.

### 5.2      Review and Handling of Privileged or Other Sensitive Material.

5.2.1   Officers may encounter materials that appear to be legal in nature, or an individual may assert that certain information is protected by attorney-client or attorney work product privilege. Legal materials are not necessarily exempt from a border search, but they may be subject to the following special handling procedures. If an Officer suspects that the content of such a material may constitute evidence of a crime or otherwise pertain to a determination within the jurisdiction of CBP, the Officer must seek advice from the CBP Associate/Assistant Chief Counsel before conducting a search of the material, and this consultation shall be noted in appropriate CBP systems of records. CBP counsel will coordinate with the U.S. Attorney's Office as appropriate.

5.2.2   Other possibly sensitive information, such as medical records and work-related information carried by journalists, shall be handled in accordance with any applicable federal law and CBP policy. Questions regarding the review of these materials shall be directed to the CBP Associate/Assistant Chief Counsel, and this consultation shall be noted in appropriate CBP systems of records.

4

5.2.3  Officers encountering business or commercial information in electronic devices shall treat such information as business confidential information and shall protect that information from unauthorized disclosure.  Depending on the nature of the information presented, the Trade Secrets Act, the Privacy Act, and other laws, as well as CBP policies, may govern or restrict the handling of the information.  Any questions regarding the handling of business or commercial information may be directed to the CBP Associate/Assistant Chief Counsel.

5.2.4  Information that is determined to be protected by law as privileged or sensitive will only be shared with federal agencies that have mechanisms in place to protect appropriately such information.

**5.3    Detention and Review in Continuation of Border Search of Information**

5.3.1  Detention and Review by CBP

An Officer may detain electronic devices, or copies of information contained therein, for a brief, reasonable period of time to perform a thorough border search.  The search may take place on-site or at an off-site location, and is to be completed as expeditiously as possible.  Unless extenuating circumstances exist, the detention of devices ordinarily should not exceed five (5) days.

5.3.1.1 Approval of and Time Frames for Detention.  Supervisory approval is required for detaining electronic devices, or copies of information contained therein, for continuation of a border search after an individual's departure from the port or other location of detention.  Port Director, Patrol Agent in Charge, or other equivalent level manager approval is required to extend any such detention beyond five (5) days. Extensions of detentions exceeding fifteen (15) days must be approved by the Director Field Operations, Chief Patrol Agent, Director, Air Operations, Director, Marine Operations, or other equivalent manager, and may be approved and re-approved in increments of no more than seven (7) days.  Approvals for detention and any extension thereof shall be noted in appropriate CBP systems of records.

5.3.1.2 Destruction.  Except as noted in section 5.4 or elsewhere in this Directive, if after reviewing the information pursuant to the time frames discussed in section 5.3, there is not probable cause to seize it, any copies of the information must be destroyed, and any electronic device must be returned.  Upon this determination that there is no value to the information copied from the device, the copy of the information is destroyed as expeditiously as possible, but no later than seven (7) days after such determination unless circumstances require additional time, which must be approved by a supervisor and documented in an appropriate CBP system of records and which must be no later than twenty one (21) days after such determination.  The destruction shall be noted in appropriate CBP systems of records.

5.3.1.3 Notification of Border Search.  When a border search of information is conducted on an electronic device, and when the fact of conducting this search can be disclosed to the individual transporting the device without hampering national security or

5

law enforcement or other operational considerations, the individual may be notified of the purpose and authority for these types of searches, how the individual may obtain more information on reporting concerns about their search, and how the individual may seek redress from the agency if he or she feels aggrieved by a search.

5.3.1.4   Custody Receipt.   If CBP determines it is necessary to detain temporarily an electronic device to continue the search, the Officer detaining the device shall issue a completed Form 6051D to the individual prior to the individual's departure.

5.3.2   Assistance by Other Federal Agencies.

5.3.2.1 The use of other federal agency analytical resources outside of CBP and ICE, such as translation, decryption, and subject matter expertise, may be needed to assist CBP in reviewing the information contained in electronic devices or to determine the meaning, context, or value of information contained in electronic devices.

5.3.2.2 Technical Assistance – With or Without Reasonable Suspicion.   Officers may sometimes have technical difficulties in conducting the search of electronic devices such that technical assistance is needed to continue the border search.  Also, in some cases Officers may encounter information in electronic devices that requires technical assistance to determine the meaning of such information, such as, for example, information that is in a foreign language and/or encrypted (including information that is password protected or otherwise not readily reviewable).  In such situations, Officers may transmit electronic devices or copies of information contained therein to seek technical assistance from other federal agencies.  Officers may seek such assistance with or without individualized suspicion.

5.3.2.3 Subject Matter Assistance by Other Federal Agencies – With Reasonable Suspicion.  In addition to encountering information in electronic devices that is in a foreign language, encrypted, or requires technical assistance, Officers may encounter information that requires referral to subject matter experts in other federal agencies to determine the meaning, context, or value of information contained therein as it relates to the laws enforced and administered by CBP.  Therefore, Officers may transmit electronic devices or copies of information contained therein to other federal agencies for the purpose of obtaining subject matter assistance when they have reasonable suspicion of activities in violation of the laws enforced by CBP.  While many factors may result in reasonable suspicion, the presence of an individual on a government-operated and government-vetted terrorist watch list will be sufficient to create reasonable suspicion of activities in violation of the laws enforced by CBP.

5.3.2.4 Approvals for seeking translation, decryption, and subject matter assistance. Requests for translation, decryption, and subject matter assistance require supervisory approval and shall be properly documented and recorded in CBP systems of records.  If an electronic device is to be detained after the individual's departure, the Officer detaining the device shall execute a Form 6051D and provide a copy to the individual

6

prior to the individual's departure. All transfers of the custody of the electronic device will be recorded on the Form 6051D.

5.3.2.5 Electronic devices should be transmitted only when necessary to render the requested translation, decryption, or subject matter assistance. Otherwise, a copy of such information should be transmitted in lieu of the device in accord with this Directive.

5.3.2.6 When information from an electronic device is transmitted to another federal agency for translation, decryption, or subject matter assistance, the individual will be notified of this transmission unless CBP determines, in consultation with the receiving agency or other agency as appropriate, that notification would be contrary to national security or law enforcement or other operational interests. If CBP's transmittal seeks assistance regarding possible terrorism, or if the individual is on a government-operated and government-vetted terrorist watch list, the individual will not be notified of the transmittal or his or her presence on a watch list. When notification is made to the individual, the Officer will annotate the notification in CBP systems of records and on the Form 6051D.

5.3.3  Responses and Time for Assistance

5.3.3.1 Responses Required. Agencies receiving a request for assistance in conducting a border search are to provide such assistance as expeditiously as possible. Where subject matter assistance is requested, responses should include all appropriate findings, observations, and conclusions relating to the laws enforced by CBP.

5.3.3.2 Time for Assistance. Responses from assisting agencies are expected in an expeditious manner so that CBP may complete the border search in a reasonable period of time. Unless otherwise approved by the Director Field Operations, Chief Patrol Agent, Director, Air Operations, Director, Marine Operations, or equivalent level manager, responses from an assisting agency should be received within fifteen (15) days. If the assisting agency is unable to respond in that period of time, the Director Field Operations, Chief Patrol Agent, Director, Air Operations, Director, Marine Operations, or equivalent level manager may permit extensions in increments of seven (7) days.

5.3.3.3 Revocation of a Request for Assistance. If at any time a CBP supervisor involved in a request for assistance is not satisfied with the assistance being provided, the timeliness of assistance, or any other articulable reason, the request for assistance may be revoked, and the CBP supervisor may require the assisting agency to return to CBP all electronic devices that had been provided to the assisting agency, and any copies thereof, as expeditiously as possible, except as noted in 5.4.2.3. Any such revocation shall be documented in appropriate CBP systems of records. When CBP has revoked a request for assistance because of the lack of a timely response, CBP may initiate the request with another agency pursuant to the procedures outlined in this Directive.

7

5.3.3.4 <u>Destruction</u>.  Except as noted in section 5.4.1 below or elsewhere in this Directive, if after reviewing information, probable cause to seize the information does not exist, CBP will retain no copies of the information.

**5.4     Retention and Sharing of Information Found in Border Searches**

5.4.1   Retention and Sharing of Information Found in Border Searches

5.4.1.1 <u>Retention with Probable Cause</u>.  Officers may seize and retain an electronic device, or copies of information from the device, when, based on a review of the electronic device encountered or on other facts and circumstances, they determine there is probable cause to believe that the device, or copy of the contents thereof, contains evidence of or is the fruit of a crime that CBP is authorized to enforce.

5.4.1.2 <u>Retention of Information in CBP Privacy Act-Compliant Systems</u>.  Without probable cause to seize an electronic device or a copy of information contained therein, CBP may retain only information relating to immigration, customs, and other enforcement matters if such retention is consistent with the privacy and data protection standards of the system of records in which such information is retained.  For example, information collected in the course of immigration processing for the purposes of present and future admissibility of an alien may be retained in the A-file, Central Index System, TECS, and/or ENFORCE or other systems as may be appropriate and consistent with the policies governing such systems.

5.4.1.3 <u>Sharing Generally</u>.  Nothing in this Directive limits the authority of CBP to share copies of information contained in electronic devices (or portions thereof), which are retained in accordance with this Directive, with federal, state, local, and foreign law enforcement agencies to the extent consistent with applicable law and policy.

5.4.1.4 <u>Sharing of Terrorism Information</u>.  Nothing in this Directive is intended to limit the sharing of terrorism-related information to the extent the sharing of such information is mandated by statute, Presidential Directive, or DHS policy.  Consistent with 6 U.S.C. 122(d)(2) and other applicable law and policy, CBP, as a component of DHS, will promptly share any terrorism information encountered in the course of a border search with elements of the federal government responsible for analyzing terrorist threat information.  In the case of such terrorism information sharing, the element receiving the information will be responsible for providing CBP with all appropriate findings, observations, and conclusions relating to the laws enforced by CBP.  The receiving entity will be responsible for managing retention and disposition of information it receives in accordance with its own legal authorities and responsibilities.

5.4.1.5 <u>Safeguarding Data During Storage and Transmission</u>.  CBP will appropriately safeguard information retained, copied, or seized under this Directive and during transmission to another federal agency.  Appropriate safeguards include keeping materials in locked cabinets or rooms, documenting and tracking copies to ensure appropriate disposition, and other safeguards during transmission such as password

protection or physical protections.  Any suspected loss or compromise of information that contains personal data retained, copied, or seized under this Directive must be immediately reported to the Port Director, Patrol Agent in Charge or equivalent level manager and the CBP Office of Internal Affairs.

5.4.1.6 <u>Destruction</u>.  Except as noted in this section or elsewhere in this Directive, if after reviewing information, there exists no probable cause to seize the information, CBP will retain no copies of the information.

5.4.2   Retention by Agencies Providing Translation, Decryption, or Subject Matter Assistance

5.4.2.1 <u>During Assistance</u>.  All electronic devices, or copies of information contained therein, provided to an assisting federal agency may be retained by that agency for the period of time needed to provide the requested assistance to CBP or in accordance with section 5.4.2.3 below.

5.4.2.2 <u>Return or Destruction</u>.  At the conclusion of the requested assistance, all information must be returned to CBP as expeditiously as possible, and the assisting agency must advise CBP in accordance with section 5.3.3 above.  In addition, the assisting federal agency should destroy all copies of the information transferred to that agency unless section 5.4.2.3 below applies.  In the event that any electronic devices are transmitted, they must not be destroyed; they are to be returned to CBP unless seized by the assisting agency based on probable cause or retained per 5.4.2.3.

5.4.2.3 <u>Retention with Independent Authority</u>.  If an assisting federal agency elects to continue to retain or seize an electronic device or information contained therein, that agency shall assume responsibility for processing the retention or seizure.  Copies may be retained by an assisting federal agency only if and to the extent that it has the independent legal authority to do so—for example, when the information relates to terrorism or national security and the assisting agency is authorized by law to receive and analyze such information.  In such cases, the retaining agency should advise CBP of its decision to retain information under its own authority.

**5.5   Reporting Requirements**

5.5.1   The Officer performing the border search of information shall be responsible for completing all after-action reporting requirements.  This responsibility includes ensuring the completion of all applicable documentation such as the Form 6051D when appropriate, and creation and/or updating records in CBP systems.  Reports are to be created and updated in an accurate, thorough, and timely manner.  Reports must include all information related to the search through the final disposition including supervisory approvals and extensions when appropriate.

5.5.2  In instances where an electronic device or copy of information contained therein is forwarded within CBP as noted in section 5.3.1, the receiving Officer is responsible for recording all information related to the search from the point of receipt forward through the final disposition.

5.5.3  Reporting requirements for this Directive are in addition to, and do not replace, any other applicable reporting requirements.

**5.6    Management Requirements**

5.6.1   The duty supervisor shall ensure that the Officer completes a thorough inspection and that all notification, documentation, and reporting requirements are accomplished.

5.6.2  The appropriate CBP Second line supervisor shall approve and monitor the status of the detention of all electronic devices or copies of information contained therein.

5.6.3  The appropriate CBP Second line supervisor shall approve and monitor the status of the transfer of any electronic device or copies of information contained therein for translation, decryption, or subject matter assistance from another federal agency.

5.6.4  The Director, Field Operations, Chief Patrol Agent, Director, Air Operations, Director, Marine Operations, or equivalent level manager shall establish protocols to monitor the proper documentation and recording of searches conducted pursuant to this Directive and the detention, transfer, and final disposition of electronic devices or copies of information contained therein in order to ensure compliance with the procedures outlined in this Directive.

**6     MEASUREMENT.**  CBP Headquarters will continue to develop and maintain appropriate mechanisms to ensure that statistics regarding border searches of electronic devices, and the results thereof, can be generated from CBP systems using data elements entered by Officers pursuant to this Directive.

**7     AUDIT.**  CBP Management Inspection will develop and periodically administer an auditing mechanism to review whether border searches of electronic devices are being conducted in conformity with this Directive.

**8     NO PRIVATE RIGHT CREATED.**  This Directive is an internal policy statement of U.S. Customs and Border Protection and does not create or confer any rights, privileges, or benefits on any person or party.

**9     DISCLOSURE.**  This Directive may be shared with the public.

10

**10.    SUPERSEDES.**  Procedures for Border Search/Examination of Documents, Paper, and Electronic Information (July 5, 2007) and Policy Regarding Border Search of Information (July 16, 2008) to the extent they pertain to electronic devices.

Acting Commissioner
U.S. Customs and Border Protection

EXHIBIT "D"

<u>**U.S. Customs and Border Protection**</u>

**Policy Regarding Border Search of Information**

**July 16, 2008**

This policy provides guidance to U.S Customs and Border Protection (CBP) Officers, Border Patrol Agents, Air and Marine Agents, Internal Affairs Agents, and any other official of CBP authorized to conduct border searches (for purposes of this policy, all such officers and agents are hereinafter referred to as "officers") regarding the border search of information contained in documents and electronic devices. More specifically, this policy sets forth the legal and policy guidelines within which officers may search, review, retain, and share certain information possessed by individuals who are encountered by CBP at the border, functional equivalent of the border, or extended border. This policy governs border search authority only; nothing in this policy limits the authority of CBP to act pursuant to other authorities such as a warrant or a search incident to arrest.

A.      **Purpose**

CBP is responsible for ensuring compliance with customs, immigration, and other Federal laws at the border. To that end, officers may examine documents, books, pamphlets, and other printed material, as well as computers, disks, hard drives, and other electronic or digital storage devices. These examinations are part of CBP's long-standing practice and are essential to uncovering vital law enforcement information. For example, examinations of documents and electronic devices are a crucial tool for detecting information concerning terrorism, narcotics smuggling, and other national security matters; alien admissibility; contraband including child pornography, monetary instruments, and information in violation of copyright or trademark laws; and evidence of embargo violations or other import or export control laws.

Notwithstanding this law enforcement mission, in the course of every border search, CBP will protect the rights of individuals against unreasonable search and seizure. Each operational office will maintain appropriate mechanisms for internal audit and review of compliance with the procedures outlined in this policy.

B.      **Review of Information in the Course of Border Search**

Border searches must be performed by an officer or otherwise properly authorized officer with border search authority, such as an ICE Special Agent. In the course of a border search, and absent individualized suspicion, officers can review and analyze the information transported by any individual attempting to enter, reenter, depart, pass through, or reside in the United States, subject to the requirements and limitations provided herein. Nothing in this policy limits the authority of an officer to make written notes or reports or to document impressions relating to a border encounter.

C.   **Detention and Review in Continuation of Border Search**

(1)   <u>Detention and Review by Officers</u>.  Officers may detain documents and electronic devices, or copies thereof, for a reasonable period of time to perform a thorough border search.  The search may take place on-site or at an off-site location.  Except as noted in section D below, if after reviewing the information there is not probable cause to seize it, any copies of the information must be destroyed.  All actions surrounding the detention will be documented by the officer and certified by the Supervisor.

(2)   <u>Assistance by Other Federal Agencies or Entities</u>.

(a)   <u>Translation and Decryption</u>.  Officers may encounter information in documents or electronic devices that is in a foreign language and/or encrypted.  To assist CBP in determining the meaning of such information, CBP may seek translation and/or decryption assistance from other Federal agencies or entities.  Officers may seek such assistance absent individualized suspicion.  Requests for translation and decryption assistance shall be documented.

(b)   <u>Subject Matter Assistance</u>.  Officers may encounter information in documents or electronic devices that is not in a foreign language or encrypted, but that nevertheless requires referral to subject matter experts to determine whether the information is relevant to the laws enforced and administered by CBP.  With supervisory approval, officers may create and transmit a copy of information to an agency or entity for the purpose of obtaining subject matter assistance when they have reasonable suspicion of activities in violation of the laws enforced by CBP.  Requests for subject matter assistance shall be documented.

(c)   Original documents and devices should only be transmitted when necessary to render the requested assistance.

(d)   <u>Responses and Time for Assistance</u>.

(1)   <u>Responses Required</u>.  Agencies or entities receiving a request for assistance in conducting a border search are to provide such assistance as expeditiously as possible.  Where subject matter assistance is requested, responses should include any findings, observations, and conclusions relating to the laws enforced by CBP.

(2)   <u>Time for Assistance</u>.  Responses from assisting agencies are expected in an expeditious manner so that CBP may complete its border search in a reasonable period of time.  Unless otherwise approved by the principal field official such as the Director, Field

- 2 -

Operations or Chief Patrol Agent, responses should be received within fifteen (15) days. This timeframe is to be explained in the request for assistance. If the assisting agency is unable to respond in that period of time, CBP may permit extensions in increments of seven (7) days. For purposes of this provision, ICE is not considered to be a separate agency.

(e) <u>Destruction</u>. Except as noted in section D below, if after reviewing information, probable cause to seize the information does not exist, any copies of the information must be destroyed.

## D.   Retention and Sharing of Information Found in Border Searches

(1)   <u>By CBP</u>.

(a)   <u>Retention with Probable Cause</u>. When officers determine there is probable cause of unlawful activity—based on a review of information in documents or electronic devices encountered at the border or on other facts and circumstances—they may seize and retain the originals and/or copies of relevant documents or devices, as authorized by law.

(b)   <u>Other Circumstances</u>. Absent probable cause, CBP may only retain documents relating to immigration matters, consistent with the privacy and data protection standards of the system in which such information is retained.

(c)   <u>Sharing</u>. Copies of documents or devices, or portions thereof, which are retained in accordance with this section, may be shared by CBP with Federal, state, local, and foreign law enforcement agencies only to the extent consistent with applicable law and policy.

(d)   <u>Destruction</u>. Except as noted in this section, if after reviewing information, there exists no probable cause to seize the information, CBP will retain no copies of the information.

(2)   <u>By Assisting Agencies and Entities</u>.

(a)   <u>During Assistance</u>. All documents and devices, whether originals or copies, provided to an assisting Federal agency may be retained by that agency for the period of time needed to provide the requested assistance to CBP.

(b)   <u>Return or Destruction</u>. At the conclusion of the requested assistance, all information must be returned to CBP as expeditiously as possible. In addition, the assisting Federal agency or entity must certify to CBP that all

copies of the information transferred to that agency or entity have been destroyed, or advise CBP in accordance with section 2(c) below.

    (i)    In the event that any original documents or devices are transmitted, they must not be destroyed; they are to be returned to CBP unless seized based on probable cause by the assisting agency.

(c)    <u>Retention with Independent Authority</u>.  Copies may be retained by an assisting Federal agency or entity only if and to the extent that it has the independent legal authority to do so—for example, when the information is of national security or intelligence value.  In such cases, the retaining agency must advise CBP of its decision to retain information on its own authority.

**E.**    **Review and Handling of Certain Types of Information**

(1)    <u>Business Information</u>.  Officers encountering business or commercial information in documents and electronic devices shall treat such information as business confidential information and shall take all reasonable measures to protect that information from unauthorized disclosure.  Depending on the nature of the information presented, the Trade Secrets Act, the Privacy Act, and other laws may govern or restrict the handling of the information.

(2)    <u>Sealed Letter Class Mail</u>.  Officers may not read or permit others to read correspondence contained in sealed letter class mail (the international equivalent of First Class) without an appropriate search warrant or consent.  Only articles in the postal system are deemed "mail."  Letters carried by individuals or private carriers such as DHL, UPS, or Federal Express, for example, are not considered to be mail, even if they are stamped, and thus are subject to a border search as provided in this policy.

(3)    <u>Attorney-Client Privileged Material</u>.  Occasionally, an individual claims that the attorney-client privilege prevents the search of his or her information at the border.  Although legal materials are not necessarily exempt from a border search, they may be subject to special handling procedures.

Correspondence, court documents, and other legal documents may be covered by attorney-client privilege.  If an officer suspects that the content of such a document may constitute evidence of a crime or otherwise pertain to a determination within the jurisdiction of CBP, the officer must seek advice from the Associate/Assistant Chief Counsel or the appropriate U.S. Attorney's office before conducting a search of the document.

(4)     <u>Identification Documents</u>.  Passports, Seaman's Papers, Airman Certificates, driver's licenses, state identification cards, and similar government identification documents can be copied for legitimate government purposes without any suspicion of illegality.

**F.      No Private Right Created**

This document is an internal policy statement of CBP and does not create any rights, privileges, or benefits for any person or party.

- 5 -

**Myron F. Smith**

4321 N. West Avenue
Suite 106
Fresno, California 93705
Telephone (559) 226-5400

**PROOF OF SERVICE**
**CCP " 1011, 1013, 1013a, 2015.5**
**FRCP 5(b)**

1

2

3  STATE OF CALIFORNIA, COUNTY OF FRESNO:

4          I reside in the County of Fresno, State of California.  I am over the age of 18 and
   not a party to the within action; my business address is 1319 W. Bullard Ave, Suite 1, Fresno,
5  California 93711.

6          On **March 28, 2017**, I served the document described as **Notice of and Motion
   under Federal Rules of Criminal Procedure 41(g) and Declaration of Myron F. Smith** on
7  the interested parties in this action          by placing the true copies thereof enclosed in sealed
   envelopes addressed as stated on the attached mailing list:          by placing          the original
   a true copy thereof enclosed in sealed envelopes addressed as follows:          —
8          Grant Rabenn, Assistant US Attorney, 2500 Tulare Street, Fresno, CA

9          BY MAIL          I deposited such envelope in the mail at Fresno, California.  The
   envelope was mailed with postage thereon fully prepaid.

10

11                 As follows: I am "readily familiar" with the firm's practice of collection and
    processing correspondence for mailing.  Under that practice it would be deposited
    with U.S. postal service on that same day with postage thereon fully prepaid at
12  Fresno, California in the ordinary course of business.  I am aware that on motion
    of the party served, service is presumed invalid if postal cancellation date or
13  postage meter date is more than one day after date of deposit for mailing in
    affidavit.

14

15      XX  (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the
    offices of the addressee.

16      (BY FAX) I caused the above-referenced document to be transmitted by fax to the
    addressee(s) at the fax number(s) shown.

17

18      (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered
    to an overnight courier service for delivery to the addressee(s).

19          Executed on **March 28, 2017**, at Fresno, California.

20      (State)      I declare under penalty of perjury under the laws of the State of California that the
    ___          above is true and correct.

21

22      X  (Federal)          I declare under penalty of perjury under the laws of the United States of
    ___          America that the above is true and correct and that I am employed in the office of
    a member of the bar of this Court at whose direction the service was made.

23

24                                 _____
                                   Ara G. Dolarian

25

26

27

28